El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
El Centro de Recaudación de Ingresos Municipales (C.R.I.M.) nos solicita que revisemos una Sentencia emi-tida por el Tribunal de Apelaciones. El foro apelativo inter-medio dictaminó que el C.R.I.M. violó las garantías del de-bido proceso de ley al municipio de San Juan (Municipio). Ello, por entender que la actuación del C.R.I.M. de no con-ceder al Municipio una vista adjudicativa formal para dilucidar los estimados de ingresos, remesas y liquidaciones finales fue irrazonable y constituyó un abuso de discreción.
Analicemos los hechos y el trámite procesal que origina-ron la presente controversia.
I
El 24 de julio de 2002, el Municipio presentó ante el Tribunal de Primera Instancia una demanda en contra del C.R.I.M. para que se emitiera una sentencia declaratoria y un interdicto preliminar y permanente. El Municipio alegó que el C.R.I.M., unilateralmente, fijó el estimado anual de los ingresos correspondientes al Municipio. Por ello, el C.R.I.M. reclamó al Municipio el rembolso de unos pagos, *167 supuestamente hechos en exceso en las remesas adelanta-das para los años fiscales 1998-1999 y 1999-2000. El C.R.I.M. alegó que la cantidad adeudada por los pagos ade-lantados suman la cantidad global de $27,456,900.87. El Municipio alegó que el C.R.I.M. nunca presentó prueba fe-haciente sobre cómo realizó los cálculos matemáticos para llegar a la referida suma monetaria, según lo requiere su Ley Orgánica.(1)
El Municipio argüyó que para el C.R.I.M. poder recupe-rar las supuestas cuantías pagadas en exceso, la cuantía reclamada debía de evidenciarse mediante la presentación de una auditoría y certificación externa. De igual forma, alegó que las objeciones de los municipios sobre el cobro de los recaudos en exceso debían efectuarse dentro de un pro-cedimiento administrativo adjudicativo y de carácter formal.
El Municipio adujo que se le viola la garantía constitu-cional a un debido proceso de ley cuando el C.R.I.M. exige el cobro de remesas sin ofrecerle una vista administrativa adjudicativa y formal. Fundamentó la alegación anterior en que el C.R.I.M. carecía de un reglamento que definiera el alcance y estableciera los criterios para determinar las remesas mensuales, ingresos y las liquidaciones parciales y finales para adjudicar las controversias que surgen en tales procesos.(2)
El Municipio argumentó que el C.R.I.M. está sujeto a las disposiciones de la Ley de Procedimiento Administra-tivo Uniforme del Estado Libre Asociado de Puerto Rico *168 (L.P.A.U.).(3) Por ello, según el Municipio, las actuaciones del C.R.I.M. son contrarias al mandato legislativo. El Mu-nicipio teorizó que la retención de $2,288,075.10 realizada por el C.R.I.M. en julio de 2002 fue ilegítima. Expuso que el daño sufrido por la retención era irreparable. Ello, por afectar directa y sustancialmente las arcas municipales, menoscabando así la capacidad de prestar servicios esen-ciales a los residentes del Municipio y poniendo en peligro a los empleados municipales ya que la carencia de recursos económicos podría culminar en la cesantía de empleados.
De otra parte, el C.R.I.M. solicitó la desestimación de la solicitud de interdicto preliminar y permanente. Ello, por entender que el Municipio no presentó los requisitos nece-sarios para conceder tal recurso extraordinario. Alegó que la Asamblea Municipal y el Alcalde de San Juan habían reconocido la deuda y que el C.R.I.M. había actuado dentro de los poderes delegados por su Ley Orgánica.(4) El C.R.I.M. argüyó que no estaba obligado por ningún esta-tuto a conceder una adjudicación formal sobre este tipo de controversias.
El 5 de diciembre de 2002, el Tribunal de Primera Ins-tancia emitió una Resolución que declaró “no ha lugar” la solicitud de interdicto preliminar y permanente. El foro primario determinó que el Municipio no cumplió con su deber de evidenciar las probabilidades de prevalecer en una adjudicación final.
Sobre las alegaciones del Municipio —de su derecho a un procedimiento administrativo adjudicativo y formal— el Tribunal de Primera Instancia concluyó que al C.R.I.M. no le aplica la L.P.A.U. Por ello, el foro primario concluyó que el C.R.I.M. no estaba obligado a conceder al Municipio una adjudicación formal para resolver las controversias so-bre las remesas y liquidaciones finales. El foro primario fundamentó su decisión en que las retenciones efectuadas *169 por el Banco Gubernamental de Fomento para recuperar los excesos en las remesas que otorgó el C.R.I.M. al Muni-cipio se realizaron conforme a Derecho.
Inconforme con tal determinación, el Municipio acudió ante el Tribunal de Apelaciones. El 30 de octubre de 2003, el foro apelativo intermedio revocó la Resolución emitida por el Tribunal de Primera Instancia. El Tribunal de Ape-laciones fundamentó su Sentencia en que el C.R.I.M., por su función eminentemente pública y por su dependencia presupuestaria, es una agencia según se dispone en la L.P.A.U. Determinó que quedó probado el interés propieta-rio de los municipios en los recaudos efectuados por el C.R.I.M. Concluyó que el C.R.I.M. está obligado a ofrecerle a los municipios las garantías del debido proceso de ley estatuidas en la L.P.A.U. Por último, el foro apelativo in-termedio entendió que el Tribunal de Primera Instancia venía obligado —antes de resolver el interdicto— a anali-zar si la actuación cuestionada por el Municipio tenía un efecto adverso sobre el interés público, sus residentes o servicios. Por todo lo antes expuesto, ordenó la devolución del caso al foro primario para que se volviera a celebrar una vista sobre el interdicto preliminar y permanente.(5)
Siguiendo el mandato del Tribunal de Apelaciones, el Tribunal de Primera Instancia celebró la vista y determinó que no procedía el interdicto a favor del Municipio. Ello, debido a que el Municipio, alegadamente, no demostró que la retención que realiza el C.R.I.M. en sus remesas men-suales lo afectara económicamente, impidiéndole prestar los servicios necesarios a sus residentes así como velar por la calidad y el bienestar de vida de estos.
Inconforme con la determinación del Tribunal de Pri-mera Instancia, el Municipio acudió, nuevamente, ante el Tribunal de Apelaciones. El 30 de septiembre de 2004 el *170 foro apelativo intermedio dictó una Sentencia en la que se confirmó la determinación del foro primario. Ello, por en-tender que el Municipio no cumplió con los requisitos ne-cesarios para conceder un interdicto preliminar y permanente.
Así las cosas, el 4 de mayo de 2005, el C.R.I.M. presentó ante el Departamento de Estado su Reglamento sobre el Procedimiento Adjudicativo Disponible a los Municipios para Cuestionar las Liquidaciones Finales Anuales de las Remesas del CRIM.(6) El 30 de enero de 2006, con la inten-ción de evaluar los reclamos del Municipio correspondien-tes a las remesas anuales, el C.R.I.M. designó como Oficial Examinadora a la Leda. Carmen Correa Matos (Oficial Examinadora). El Municipio alegó ante la Oficial Exami-nadora lo siguiente:
A. [Q]ue el CRIM no posee reglas, reglamentos, normas o con-junto de normas de aplicación general que ejecuten o interpre-ten la política pública o la ley, relativos a los estimados de ingresos y determinaciones sobre las deudas por pagos en ex-ceso y/o remesas adeudadas a los municipios, que permitan a los municipios conocer y cuestionar el razonamiento seguido por el CRIM. Plantea que se ha utilizado un documento aún en estatus de borrador: Marco Pragmático y de Procedimien-to — Estimados de Ingresos, Remesas Mensuales y Liquidación.
B. [Q]ue el CRIM formuló arbitrariamente la liquidación final para el 2004-2005 como una deficiencia de $5,833,590, $11,805[,]037 para 1998-99, y $15,651,864 para 1999-2000. También alegó que, para el 2003-2004, el CRIM dejó de reme-sar unos $6,000,000, ya que el MSJ estimó sus recaudos para ese año en $153,300,000, mientras que el CRIM informó $147,326,098.
C. [Q]ue el CRIM no proveyó los criterios para la fórmula de equiparación ni los números de la lotería y subsidio por RIN, habiendo gran inconsistencia a través de los años en las cifras reportadas.
D. [Q]ue el CRIM no ha evidenciado las gestiones realizadas para llevar a cabo tasación de las propiedades, así como las realizadas para cobrar contribuciones adeudadas y exigibles. Así mismo, alega que no se han tomado en cuenta los proyec- *171 tos de mejoras que aumentan el valor de la propiedad y nue-vas construcciones que pueden estar sujetas a contribuciones.
E. [Q]ue el CRIM ha discriminado contra el MSJ al comparar con el caso del Municipio Autónomo de Ponce, al cual no se le han hecho descuentos para el cobro de su alegada deuda con el CRIM.
E [Q]ue, para los años 1995-96 al 1999-00, no se han podido presentar datos auditados separados de los estados financie-ros del CRIM sobre las liquidaciones, en términos de la fuente de los ingresos reconocidos y atribuidos a los municipios co-rrespondientes a dichos años, razón por la cual no se puede corroborar la alegada deficiencia del MSJ con respecto a un exceso de remesas por sobre los recaudos finales plasmados en la liquidación final.(7)
El 15 de mayo de 2006, luego de ponderar la prueba documental, la Oficial Examinadora emitió su informe. De-terminó que las actuaciones del C.R.I.M. no fueron arbitra-rias y que cumplió con proveerle la información y los docu-mentos necesarios al Municipio. Por ello, entendió que el Municipio estaba en posición de revisar las cifras controvertidas. Concluyó que, al menos desde el 2000, los datos reales de los movimientos de la base contributiva atribuibles a los municipios y los desembolsos por los dife-rentes conceptos estaban disponibles en los reportes, así como en los diferentes informes que preparó el C.R.I.M. El informe indicó que existía prueba de que las partes, aquí en controversia, se habían reunido en varias ocasiones para calcular los ingresos y las liquidaciones finales.
Respecto a la alegación del Municipio sobre la inconsis-tencia en la partida correspondiente al subsidio por rentas internas netas del Fondo General (R.I.N.), y en el de la lotería, el informe señaló que los cálculos matemáticos dis-puestos en la Ley Orgánica del C.R.I.M. pueden crear dife-rencias en la aportación del subsidio R.I.N. y en la lotería cuando los recaudos difieren de los ingresos municipales proyectados. A su vez, el informe indica que el Municipio no presentó alegación sobre cuál debería ser la fórmula *172 matemática para determinar la cuantía de la liquidación final, según dispone el Reglamento sobre el Procedimiento Adjudicativo Disponible a los Municipios para Cuestionar las Liquidaciones Finales Anuales de las Remesas del CRIM, Reglamento Núm. 6968, supra. Ello, a pesar de que para los años fiscales 1998-1999 y 1999-2000 el Municipio, según concluye el informe, no tuvo la oportunidad de veri-ficar los ingresos atribuidos. Lo anterior, según expresa el informe de la Oficial Examinadora, se debió a que la infor-mación no estaba disponible para la fecha en que el Muni-cipio instó su reclamación por primera vez. Por ello, la Ofi-cial Examinadora aceptó como correctas las liquidaciones que realizó el C.R.I.M. para los referidos años fiscales.
El 19 de junio de 2006, el Director Ejecutivo del C.R.I.M emitió la Resolución final que acogió, en su totalidad, las recomendaciones contenidas en el informe de la Oficial Examinadora. En suma, la Resolución estableció que el Municipio tiene una obligación respecto al pago de la su-puesta deuda por los recaudos correspondientes a las re-mesas de los años fiscales 1998-1999 y 1999-2000 por la cantidad global de $27,456,900.87, y una deficiencia para el año fiscal 2004-2005 por $5,833,589. Ante este cuadro fáctico, el Municipio presentó una moción de reconsidera-ción, la cual fue declarada “no ha lugar”.
Inconforme con dicha determinación, el Municipio pre-sentó ante el Tribunal de Apelaciones un recurso de revi-sión judicial de decisiones administrativas. El Municipio alegó que el C.R.I.M. cometió los señalamientos de error siguientes:
Erró el Centro de Recaudación de Ingresos Municipales al de-terminar que había explicado con pruebas suficientes, los cál-culos que realizó y las gestiones que hizo, para decidir las liquidaciones finales del Municipio de San Juan, de los años aquí en controversia.
Erró el Centro de Recaudación de Ingresos Municipales al no permitir descubrimiento de prueba ni desfile de prueba testi-fical ante el examinador que designó para atender el proceso y *173 con ello violó el debido proceso de ley al Municipio de San Juan aquí recurrente. Apéndice, pág. 1179.
El 22 de diciembre de 2006, el Tribunal de Apelaciones emitió una Sentencia en la cual determinó, en síntesis, lo siguiente:
Dadas las particularidades del presente caso era conveniente, a fin de garantizar a todas las partes el cumplimiento de las garantías del debido proceso de ley, que se celebrara una vista en la cual el Municipio, parte directa y adversamente afectada por el procedimiento, tuviera la oportunidad de presentar evi-dencia y contrainterrogar los testigos. Por ello, concluimos que no se cumplió con las garantías del debido procedimiento de ley, consagradas en la LPAU. Adviértase, que se impugna el cómputo de las liquidaciones anuales de las remesas en con-troversia, por lo que la actuación por parte del CRIM de no celebrar una vista administrativa luego de que la misma fue solicitada por el recurrente, fue irrazonable y constituyó un abuso de discreción. En conclusión, procede que la agencia ce-lebre una vista en la que se le provean al recurrente todas las garantías procesales a [sic] que hemos hecho alusión. Apén-dice, pág. 1270.
Inconforme con el dictamen emitido por el Tribunal de Apelaciones, el C.R.I.M. acude ante nos para alegar que el foro apelativo intermedio cometió los señalamientos de error siguientes:
Erró el Honorable T.A. al resolver que el CRIM actuó de ma-nera irrazonable al no celebrar una vista evidenciaría en el presente caso y que ello constituyó abuso de discreción, aún cuando de su propia Sentencia dicho foro recurrido reconoció que la LPAU no requiere la celebración de una audiencia como parte de las garantías del debido proceso de ley que cobija a las partes en un procedimiento administrativo, así como tam-poco lo requiere la Ley Orgánica del CRIM ni su Reglamento Administrativo.
Erró el Honorable T.A. al concluir que el CRIM emitió una Resolución sin haber citado a las partes afectadas ni darles la oportunidad de ser oídas y al concluir, por tanto, que el CRIM no recibió ni consideró los argumentos y la prueba que pudo haber aportado el M.S.J., lo cual es contrario a lo que clara-mente surge del expediente administrativo y del Informe so-metido por la Oficial Examinadora. *174 Erró el Honorable T.A. al concluir que resulta “conveniente” la celebración de mía vista evidenciaría debido a las “particula-ridades del presente caso” ya que tal determinación, además de no estar sustentada en derecho, le resta uniformidad al proceso administrativo que el CRIM le ofrece a los municipios para impugnar las liquidaciones finales, lo que constituye un precedente nefasto para el buen y sano funcionamiento del CRIM y los municipios a los cuales les sirve. Petición de cer-tiorari, pág. 11.
II
Antes de comenzar la discusión de los señalamientos de error, es importante analizar si el C.R.I.M. es una “agencia” sujeta al cumplimiento de las disposiciones de la L.RA.U. Concluimos que sí. Veamos.
Para hacer posible la autonomía de los municipios se creó el C.R.I.M. Fue creado como una “entidad de los mu-nicipios”, independiente y separada de cualquier agencia o instrumentalidad del Estado para otorgarle a los munici-pios más control sobre la recaudación de las contribuciones sobre la propiedad(8) evitando que el gobierno central con-trolara indebidamente la autoridad y el proceso fiscal de los municipios(9) El Art. 3 de la Ley Orgánica del C.R.I.M., supra, dispone, expresamente, que el C.R.I.M. estará su-jeto a las disposiciones de la L.P.A.U.(10)
Las facultades y funciones del C.R.I.M. tradicionalmente han correspondido al Estado como lo son todas las relacionadas con la recaudación de impuestos. Tales funciones coinciden con la disposición de la L.P.A.U. que define el término “agencia” sujeta a la aplicación de las disposiciones del referido estatuto.(11) Concluimos que el *175 C.R.I.M., como institución, es una “agencia gubernamen-tal”, tanto por su finalidad eminentemente pública como por la esencial dependencia de los municipios en el ámbito presupuestario.(12)
III
Resuelto que el C.R.I.M. es una agencia sujeta al cum-plimiento de las disposiciones de la L.P.A.U., y por estar los señalamientos de error íntimamente relacionados entre sí, procederemos a discutirlos en conjunto.
En el ejercicio de la revisión judicial de decisiones administrativas, los tribunales deben concederle deferencia a las resoluciones emitidas por las agencias administrativas. La deferencia se les concede en reconocimiento de la experiencia y especialidad de las agencias en las áreas reguladas por éstas.(13) Por ello, se establece una presunción de corrección hacia las determinaciones de las agencias administrativas. Lo expuesto demuestra que la revisión judicial de una decisión administrativa es limitada. Por tal razón, hemos expresado que los tribunales deben limitarse a determinar si la actuación de la agencia es arbitraria, caprichosa, ilegal o que por ser tan irrazonable constituye un abuso de discreción.(14)
A pesar de lo antes expuesto, tal deferencia sucumbe cuando las actuaciones administrativas menoscaban derechos fundamentales o son irrazonables.(15) Una ac- *176 tuación administrativa que afecte negativamente el interés público es considerada como una actuación irrazonable, constitutiva de abuso de discreción. Ello, por ser contrario a los principios creadores de las agencias administrativas, entiéndase promover la política pública del país a favor del bienestar e interés público.
No obstante el reconocimiento de nuestra limitación deferencial, el poder discrecional de las agencias es limitado. Una forma de evitar que las agencias administrativas actúen arbitraria o injustamente es especificando de forma precisa mediante reglamentos los poderes y deberes delegados de forma general por la legislación correspondiente. Además, las agencias administrativas vienen obligadas a proveer guías adecuadas para que las personas naturales o jurídicas que se vean afectadas por una actuación administrativa puedan estar debidamente informadas sobre el estado de derecho vigente.(16)
IV
¿El procedimiento administrativo de tipo adjudicativo brindado al Municipio por el C.R.I.M. cumplió con las dis-posiciones de la L.P.A.U.? Es forzoso contestar tal interro-gante en la negativa. Veamos.
La See. 3.8 de la L.RA.U. dispone lo siguiente:
(a) Los procedimientos de descubrimiento de prueba no se-rán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo. No obstante lo an-teriormente dispuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedi-miento de adjudicación sea promovido a iniciativa de la agencia.
*177 (b) Podrá, además, emitir citaciones para la comparecencia de testigos; órdenes para la producción de documentos, mate-riales u otros objetos; y órdenes protectoras, conforme a las Reglas de Procedimiento Civil. (Enfasis suplido.(17)
La letra de la referida disposición de la L.P.A. U. es clara. Cuando una agencia sea la que entable el procedimiento adjudicativo, además de estar obligada a otorgar un descubrimiento de prueba, también tendrá que conceder una vista adjudicativa evidenciaría formal. Por ello, el inciso (b) de la referida sección provee para la citación de testigos, producción de documentos e, incluso, hace una invitación a cumplir con lo dispuesto en las Reglas de Procedimiento Civil.(18) Resulta obvio que el propósito de la referida disposición de la L.P.A.U. es no sólo otorgar un descubrimiento de prueba, sino que da derecho a una vista adjudicativa evidenciaría de carácter formal.
No tenemos duda que los ingresos de los municipios que recolecta el C.R.I.M. en representación e interés de los mis-mos están revestidos de un interés gubernamental legítimo que va a la médula de la fórmula representativa que ins-trumenta la vida democrática de los ciudadanos que viven en el Municipio y que obliga a los oficiales electos por ellos en la esfera municipal a prestarle ciertos y determinados servicios. Con esos ingresos se ofrecen tales servicios a esos ciudadanos que eligieron a sus oficiales municipales con ese propósito.
En lo referente a las remesas mensuales y liquidaciones finales, el C.R.I.M. actúa al amparo de un mandato espe-cífico de su Ley Orgánica. Su ministerio incide directa-mente con un interés gubernamental legítimo que afecta la médula de nuestro sistema democrático de gobierno municipal. En la medida en que el C.R.I.M. emite una de-cisión sobre las cuantías que adeudan los municipios o vi- *178 ceversa, dicha determinación incide y afecta la ejecución y la política pública formulada por el Estado, cuyo interés primordial es brindarle autonomía fiscal a los municipios. Igual efecto tienen las decisiones relacionadas con los esti-mados de ingresos, recaudación de las contribuciones mu-nicipales y de las remesas y liquidaciones parciales o finales correspondientes a los municipios.
Considerando que los municipios tienen un interés gu-bernamental legítimo en los recaudos de los fondos que constituyen sus ingresos, resulta evidente que al resolver controversias relacionadas con dichos recaudos y aquellas relacionadas con las remesas mensuales y liquidaciones parciales y finales correspondientes, el C.R.I.M. realiza una adjudicación.
Una vez trabada una controversia entre un municipio y el C.R.I.M. sobre el estimado de ingresos, remesas mensuales o liquidaciones parciales o finales, ésta debe resolverse ante la agencia mediante un procedimiento que le brinde al municipio las garantías dispuestas por la See. 3.8 de la L.P.A.U., supra.(19) El C.R.I.M. está obligado a garantizar al Municipio las garantías necesarias de que el procedimiento será justo y equitativo, para prevenir el abuso de discreción administrativa. (20) No albergamos duda alguna de que en el presente caso el C.R.I.M. estaba obligado a celebrar una vista adversativa, adjudicativa y formal de naturaleza evidenciaría, atendidas las circunstancias particulares presentes. El resultado de un abuso de discreción administrativa de la agencia afectaría y podría hasta perjudicar al beneficiario de la fórmula democrática, o sea al ciudadano que recibe los servicios que ofrece el municipio a través de los oficiales electos por el voto directo de ellos.
*179 Concluimos que el procedimiento de recobro iniciado por el C.R.I.M., que produjo en el Municipio una deficiencia pre-supuestaria de tal naturaleza que le ocasionó un disloque en sus arcas al punto que lo obligó a tomar dinero a préstamo al Banco Gubernamental de Fomento para lidiar con tal si-tuación, es de naturaleza adjudicativa formal porque existe una controversia fáctica. En esos casos el C.R.I.M. tiene que cumplir con la See. 3.8 de la L.P.A.U., supra. Nada impide que el C.R.I.M. pueda adjudicar sin celebrar una vista evi-denciaría cuando no exista controversia sobre los hechos y, además, toda la evidencia documental que surge del expe-diente señale claramente la corrección de la determinación de la agencia. Ese no es el caso ante nos.
El C.R.I.M. se negó a conceder la solicitud de descubri-miento de prueba realizada por el Municipio, contravi-niendo directamente lo dispuesto en la See. 3.8 de la L.P.A.U., supra. Nuevamente, la referida sección de la L.P.A.U. dispone que “[l]os procedimientos de descubri-miento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el pro-cedimiento adjudicativo”. Tal situación no ocurrió en el caso de marras. Las agencias administrativas garantiza-rán a todo querellado el derecho a los mecanismos de des-cubrimiento de prueba para los casos en que la agencia administrativa promueva “motu proprio” el procedimiento de adjudicación. Además, se podrán emitir citaciones para requerir la comparecencia de testigos; órdenes para la pro-ducción de documentos u otros objetos, y órdenes protecto-ras conforme a las Reglas de Procedimiento Civil.(21)
En el presente caso, el C.R.I.M. inició el procedimiento para recobrar al Municipio los adelantos de ingresos, ale-gadamente indebidos, realizados durante los años fiscales *180 1998-1999 y 1999-2000 por la suma global de $27,456,900.83. Para ello, comenzó en julio de 2002 a des-contar $2,888,075.10 de la remesa mensual del Municipio para abonar a la alegada deuda. Tal acción del C.R.I.M. produjo que el Municipio se viera obligado a tomar un em-préstito del Banco Gubernamental de Fomento —autori-zado por la Ley Orgánica del C.R.I.M.— para financiar el resultado de la acción del C.R.I.M.(22)
La acción iniciada por el C.R.I.M. es ultra vires por ser contraria a la L.P.A.U. Además, el C.R.I.M. no evidenció cómo calculó la deuda. Por ello, el Municipio procedió a solicitar como remedio el pago total de $33,456,900.87. So-licitó descubrir prueba relacionada con los criterios y mé-todos utilizados para calcular los ingresos municipales. Re-quirió acceso al sistema de almacenamiento de datos del C.R.I.M. y a las personas con el conocimiento sobre la in-formación relevante a la controversia. Apoyó su solicitud en las conclusiones de un informe de auditoría realizada en el 2001 a los efectos de que no era posible identificar el flujo de las fuentes de los ingresos determinados por el C.R.I.M. para los años fiscales 1998-1999 y 1999-2000. Todo ello para corroborar la corrección del cálculo realizado por esa agencia sobre los ingresos del Municipio para esos años fiscales. Solicitó, además, la celebración de una vista evidenciaría.
El C.R.I.M. no cumplió con lo que requirió el Municipio. Alegó que la información suministrada al Municipio con anterioridad al inicio del procedimiento administrativo era suficiente para “litigar la controversia”. El C.R.I.M. consi-deró que tal procedimiento alcanzaba los fines de la justi-cia y no resultaba necesario autorizar un descubrimiento de prueba sobre lo solicitado por el Municipio ni la celebra-ción de una vista evidenciaría. No tiene razón.
El C.R.I.M. reconoció que el informe de auditoría de 2001 no pudo identificar un flujo de la fuente de ingresos *181 para los años fiscales 1998-1999 y 1999-2000. El C.R.I.M., simplemente, puntualizó que de su Ley Orgánica surgen los cálculos de las remesas.
La L.P.A.U. reconoce el derecho del Municipio para la celebración de una vista evidenciaría para dilucidar una controversia como la presente(23) Con ello se promueve que el procedimiento adjudicativo sea justo y equitativo. Los detalles que obran en el expediente sobre las liquidaciones finales para todos los años fiscales en controversia no de-muestran una fórmula clara para calcular las remesas y liquidaciones finales. El que el C.R.I.M. le brindara acceso al Municipio a los informes de las auditorías realizadas de las liquidaciones finales de las remesas no eliminó la con-troversia de hechos existente en el caso ante nos.
Por ello, no se nos ha colocado en posición de concluir que el C.R.I.M. suministró la descripción del método y los parámetros utilizados por esa agencia al realizar el esti-mado de ingresos del Municipio. Tampoco consideramos como el umbral de la presente controversia el que las de-terminaciones sobre ingresos, incluso la liquidación anual del Municipio, en su momento, fueron auditados por una firma externa del C.R.I.M. Máxime, cuando para los años fiscales 1998-1999 y 1999-2000 el C.R.I.M. no tenía la obli-gación de realizar una auditoría independiente de las liqui-daciones finales a los municipios. Para lograr una adjudi-cación justa y equitativa en la presente controversia, es necesario que se le brinde al Municipio la oportunidad de descubrir prueba y la celebración de una vista evidenciaría. Ello, para poder estar en posición de ofrecer prueba de la misma naturaleza, atendiendo las circunstan-cias particulares del presente caso.
Nos impacta profundamente la imprecisión y el cúmulo de incorrecciones que se deduce del expediente judicial pre- *182 sentado por el C.R.I.M. (24) En específico, al estimar los in-gresos del Municipio y al calcular las remesas mensuales que le corresponden. Ello ha provocado que el Municipio tenga que acogerse a préstamos para cubrir sus obligacio-nes, las cuales incluyen la prestación de servicios a la ciudadanía.
No podemos concluir sin antes expresar nuestra sor-presa y preocupación por la forma distinta en que el C.R.I.M. atendió y tramitó la situación del Municipio de Ponce, la cual era esencialmente igual a la del Municipio de San Juan. No observamos uniformidad en tales procedimientos. Por ello, la alegación del C.R.I.M. sobre la necesidad de mantener uniformidad en los procedimientos administrativos es inmeritoria. Cumplir con las disposicio-nes estatutarias de la L.P.A.U. y con lo aquí pautado sí le garantiza a los municipios y a la agencia uniformidad e igualdad en los procedimientos administrativos. La dife-rencia entre ambos procedimientos marca un efecto y un resultado distinto en las arcas y el presupuesto de cada municipio, colocando mayor peso en uno que en otro afec-tando directamente la cantidad y calidad del servicio que estos podrían brindarles a la ciudadanía que le sirven. Im-parta nuestra conciencia tal actuación.
*183 V

Por todo lo antes expuesto, confirmamos la Sentencia emitida por el Tribunal de Apelaciones. Devolvemos la con-troversia de autos al C.R.I.M. para que conceda al munici-pio de San Juan un procedimiento adjudicativo formal con todas las garantías a las que tiene derecho según lo aquí pautado.

La Juez Asociada Señora Rodríguez Rodríguez disintió con una opinión escrita, a la cual se unió el Juez Presi-dente Señor Hernández Denton. La Jueza Asociada Señora Fiol Matta no intervino.
— O —

 21 L.P.R.A. sec. 5808(i),(q) y (v).

 El 4 de mayo de 2005, el Centro de Recaudación de Ingresos Municipales (C.R.I.M.) aprobó el Reglamento Núm. 6968, Reglamento sobre el Procedimiento Adjudicativo Disponible a los Municipios para Cuestionar las Liquidaciones Finales Anuales de las Remesas del CRIM. Por ello, cuando el municipio de San Juan enta-bló la reclamación no existía ningún reglamento sobre el procedimiento adjudicativo disponible para este tipo de controversias.

 3 L.P.R.A. see. 2101 et seq.

 21 L.P.R.A. see. 5801 et seq.

 Inconforme, el 10 de diciembre de 2003 el C.RJ.M. presentó una petición de certiorari ante este Tribunal. Nos solicitó, en ese entonces, que se revocara la Sen-tencia emitida por el Tribunal de Apelaciones. El 13 de febrero de 2004 denegamos la expedición del referido recurso.

 Reglamento Núm. 6968 de 4 de mayo de 2005.

 Véase Informe del Oficial Examinador, Apéndice, págs. 927-928.

 21 L.P.R.A. sec. 5803(b); C.R.I.M. v. Fed. Central Trabajadores, 142 D.P.R. 968 (1997).

 21 L.P.R.A. see. 5801 et seq.

 21 L.P.R.A. see. 5802.

 3 L.P.R.A. see. 2102.

 J.R.T. v. Corp. del Conserv. Música P.R., 140 D.P.R. 407 (1996).

 Rivera Concepción v. A.R.Pe., 152 D.P.R. 116, 122 (2000); Assoc. Ins. Agencies v. Com. Seg. P.R., 144 D.P.R. 425, 436 (1997); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 672-673 (1997); Metropolitana S.E. v. A.R.Pe., 138 D.P.R. 200, 213 (1995).

 Cruz v. Administración, 164 D.P.R. 341 (2005); Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 280 (1999).

 Castillo v. Depto. del Trabajo, 152 D.P.R. 91 (2000); Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881 (1999); Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1997); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692 (1975).

 Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105 (2002).

 3 L.P.R.A. sec. 2158(a) y (b).

 32 L.P.R.A. Ap. III.

 3 L.P.R.A. see. 2158; Rodríguez v. Tribunal Superior, 104 D.P.R. 335 (1975), citando a Fuentes v. Sherwin, 407 U.S. 67 (1972), y a Armstrong v. Manzo, 380 U.S. 545 (1965).

 3 L.P.R.A. sec. 2158(a) y (b).

 íd.

 21 L.P.R.A. sees. 5821-5831.

 3 L.P.R.A. sec. 2158(a) y (b).

 En el Indice del Apéndice del presente recurso surge que el aquí peticionario, el C.R.I.M., incluyó en su apéndice lo siguiente:
“47. Documento del CRIM sobre análisis Valoración Municipio de San Juan
48. Carta del entonces Director de Finanzas del Municipio de San Juan al Director Ejecutivo del CRIM del 11 de junio de 2002
49. Carta del Director Ejecutivo del CRIM al entonces Director de Finanzas del Municipio de San Juan de 2 de junio de 2002
50. Análisis Ingresos Incluidos en las liquidaciones Revisadas, Municipio de San Juan, años fiscales 1996-97 a 2001-01
51. Carta del Director Ejecutivo del CRIM al Alcalde de San Juan del 31 de mayo de 2002
52. Carta del entonces Director de Finanzas del Municipio de San Juan al Director Ejecutivo del CRIM del 25 de junio de 2002”
No obstante, tales documentos no se encuentran en el Apéndice del recurso ante nos. Los títulos que aparecen en el índice sugieren que contienen información relacio-nada con la controversia de autos. Apéndice de la Petición de certiorari, pág. 3.